262 So.2d 452 (1972)
Ronald W. REHUREK and Susan Rehurek, His Wife, Appellants,
v.
CHRYSLER CREDIT CORPORATION et al., Appellees.
No. 71-567.
District Court of Appeal of Florida, Second District.
May 17, 1972.
Rehearings Denied June 14, 1972.
*453 Howard C. Hadden, Tampa, for appellants.
Marvin Solomon, Tampa, for appellee Chrysler Credit.
W. DeHart Ayala, Jr. of Few & Ayala, Tampa, for appellee Brooks-Massey.
Irving G. Lawrence, of Rousseau, Wilkinson, Gordon & Lawrence, Tampa, for appellee Chrysler Corp.
LILES, Judge.
Ronald W. Rehurek and Susan Rehurek, his wife, purchased a new 1969 Dart automobile from Brooks-Massey Dodge, Inc., a dealer in Tampa, Florida. The automobile was manufactured by Chrysler Corporation and the sale was financed by Chrysler Credit Corporation. Shortly after the purchase, as alleged by Rehurek, the car begun to give him trouble. He alleges that the air-conditioning did not function properly, the engine burned an excessive amount of oil, the front-end assembly vibrated severely, and the brakes pulled. After approximately three months and 10,000 miles, he delivered the car to the dealer and informed Chrysler Credit Corporation that he would make no further payments. Chrysler Credit Corporation then brought suit in the amount of the deficiency after repossession and sale of the automobile, Rehurek answered Chrysler Credit's suit setting up seven defenses to Chrysler Credit's claim, and filed a third-party complaint against the dealer, Brooks-Massey Dodge, Inc., and Chrysler Corporation, the manufacturer. Rehurek requested a trial by jury of all the issues. The court entered its order granting motions for judgments on the pleadings as to all three appellees. Rehureks bring this appeal.
We take first the question presented in the suit against Chrysler Credit Corporation, assignee of the retail installment contract. The trial court, in granting Chrysler Credit's claim against Rehurek, struck his defenses. We must determine whether or not the purchaser is precluded from raising certain defenses under a retail installment contract which provides for waiver of defenses against the assignee, Chrysler Credit Corporation.
Under Fla. Stat. § 679.318, F.S.A., the assignee occupies basically the same position as the assignor unless an enforceable agreement exists not to assert certain defenses under Section 679.206. The pertinent part of this statute reads:
"... [A]n agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the chapter on commercial paper (chapter 673)."
The question then is whether Rehurek has waived his right to assert the defenses that the automobile was not what he had bargained for and whether or not Chrysler Credit Corporation took the assignment of the retail installment contract for value, in good faith and without notice of a claim or defense except those which may be asserted against a holder in due course.
This question has been answered on several occasions throughout the country and the courts have said this provision will not be enforced when it appears that:
"... [T]he financer maintains a close relationship with the dealer whose paper he buys; where the financer is closely connected with the dealer's business operations or with the particular credit transaction; or where the financer furnishes the form of sale contract and note for use by the dealer, the buyer signs the contract and note concurrently, and the dealer endorses the note and assigns the contract immediately thereafter or within the period prescribed by the financer." Unico v. Owen, 1967, 50 N.J. 101, 232 A.2d 405 at 411.
*454 The Florida Supreme Court in Mutual Finance Co. v. Martin, Fla. 1953, 63 So.2d 649, when faced with this problem, held that the purchaser of an installment sales contract was not a purchaser in good faith for the reason that the dealer and finance company were too closely related.
In the case of Industrial Credit Company v. Mike Bradford & Co., Inc., Fla.App. 1965, 177 So.2d 878, the court reaffirmed the holding in Martin and set up the same conditions in refusing to enforce a waiver of defenses. In the instant case we believe Chrysler Credit Corporation was not a purchaser in good faith such as would permit them to rely on the waiver of defenses. Chrysler Credit and Brooks-Massey Dodge, Inc., were too closely connected in this particular sale. Chrysler Credit Corporation was formed exclusively for the purpose of financing the sale of Chrysler products. Chrysler Credit furnished the forms of the sales contract; it investigated the credit rating of the purchaser; and did all of the things which are enumerated in the cited cases to bring them in close relationship with Brooks-Massey. Most retail installment sales made by Chrysler dealers are assigned as a matter of course to Chrysler Credit Corporation. The retail installment contract signed by the Rehureks contained a pre-printed assignment clause to Chrysler Credit Corporation and all that was needed to make the assignment effective was for the dealer to fill in the name of his agency, date the form (which incidentally was dated the same day as the date of purchase) and sign it. We therefore believe that Chrysler Credit Corporation did not as a matter of law take the assignment in good faith.
We come now to the cross-claim filed against Brooks-Massey Dodge, Inc., the dealer. They urge that the implied warranties of merchantability and fitness were effectively excluded by either the disclaimer clause in the retail installment contract or by the terms of the warranty booklet which were incorporated by reference into the contract. The disclaimer clause appears in small print in paragraph 6 on the back page of the contract and reads as follows:
"... No warranties, express or implied, and no representations, promises or statements have been made by Seller unless endorsed herein in writing. No modification of any of the terms and conditions hereof shall be valid in any event and Buyer expressly waives the right to rely thereon unless made in writing duly executed by the Seller. If the property covered by this contract is a new motor vehicle, Seller hereby confirms its written warranty against defective materials or workmanship, where such warranty has been made by the Seller."
This language must be examined in the light of the requirements contained in Fla. Stat. § 672.316(2), F.S.A., Exclusion or Modification of Warranties. The pertinent part of that statute reads as follows:
"... [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."
The disclaimer clause contained in paragraph 6 fails for the lack of conspicuousness. A cursory examination of the contract will show that the language was of the same type contained in the other provisions of the contract, was not in bold type and did not comply with the provisions in the statute. The Third District, in the recent case of Orange Motors of Coral Gables v. Dade Co. Dairies, Fla.App. 1972, 258 So.2d 319, said at page 320:
"Under § 672.316(2), Fla. Stat., F.S.A., the critical requirement for language excluding or modifying implied warranties of merchantability or fitness is that it be `conspicuous.' ... Any language *455 attempting a limitation of these warranties which is not conspicuous has failed in its purpose ... The disclaimer in the instant case was in the same color and size of type used for other provisions of the contract." (Citations omitted.)
This question has been answered and requires no further elaboration.
Brooks-Massey urges that the reasoning behind Fla. Stat. § 672.316 was not violated in that purchaser was not surprised at the exclusion of the warranties because he stated on deposition that he had read the contract, including the disclaimer clause. We are not persuaded by this argument. Anderson in his text, Anderson, Uniform Commercial Code, Vol. 1, states at p. 677:
"The view has also been expressed that the Code seeks to avoid the `unconscionable' destruction of rights of buyers, it being stated that any attempt to exclude or modify an implied warranty of merchantability must use such terms, and, if in writing, must be conspicuous to the buyer, because it is unconscionable to permit general statements to destroy the buyer's right that the thing he purchases perform properly." (Emphasis supplied.)
We do not believe this contract would inform an average purchaser that he was waiving his right to insist that his new automobile perform properly.
Brooks-Massey maintains that the warranty booklet which contained disclaimer language and was printed in bold and conspicuous type and the word merchantability being specifically mentioned was sufficient to inform the purchaser of his disclaimer of merchantability and fitness. Again, Anderson, Uniform Commercial Code, Vol. 1, at p. 695 states:
"A limitation of warranties to be effective must have been bargained for so that a limitation stated in printed matter given by the seller to the buyer after the sale was completed is not binding; as where the automobile dealer, after the sale, gave the buyer the manufacturer's printed material which contained the warranty limitation."
See also Zabriskie Chevrolet, Inc. v. Smith, 1968, 99 N.J. Super. 441, 240 A.2d 195; Tiger Motor Co. v. McMurtry, 1969, 284 Ala. 283, 224 So.2d 638.
The cover page of the warranty booklet states that the book contains, among other things, Chrysler Corporation's warranty. We believe the average purchaser should not be called upon to equate the warranties made to him by the seller with warranties made by Chrysler Corporation.
We, therefore, hold that the lower court erred in granting judgment on the pleadings as to the dealer Brooks-Massey. The disclaimer clause in the retail installment contract is ineffective because it does not meet the requirements of Fla. Stat. § 672.316(2), F.S.A. and the disclaimer clause in the warranty booklet is immaterial because it was not incorporated into the contract and therefore was not a basis for the bargain.
We come next to the question of whether or not a purchaser of a new automobile is prohibited from asserting breach of implied warranty of merchantability and fitness against a manufacturer, in this instance, Chrysler Corporation, notwithstanding want of privity. We think the law in Florida on this point is well settled and has been enunciated in the following cases: Manheim v. Ford Motor Company, Fla. 1967, 201 So.2d 440; Hoskins v. Jackson Grain Company, Fla. 1953, 63 So.2d 514; Posey v. Ford Motor Co., Fla.App. 1961, 128 So.2d 149; Blanton v. Cudahy Packing Co., 1944, 154 Fla. 872, 19 So.2d 313.
Chrysler Corporation has urged that a manufacturer may disclaim the warranties of merchantability and fitness, and that their warranties are limited to replacement of defective parts and correction of defective workmanship. We do not agree. *456 Fla. Stat. § 672.316, F.S.A. does not permit a manufacturer of stock items to disclaim those warranties. Ford Motor Company v. Pittman, Fla.App. 1969, 227 So.2d 246, a decision of the First District, says at p. 249:
"Generally, a manufacturer of stock items is not the `seller' to the ultimate consumer under the terms of the Uniform Commercial Code. Section 672.2106(1) states, `A "sale" consists in the passing of title from the seller to the buyer for a price... .'"
We, therefore, hold that the lower court erred in granting judgment on the pleadings as to the manufacturer, Chrysler Corporation.
In passing, we observe that the purchase of an automobile is not only a considerable expenditure, but in this day of mobility, a necessity. When a purchaser answers the inducements made in the tremendous advertising campaigns carried on by the automobile industry and purchases a new automobile, he has the right to expect the automobile to perform properly and as represented. If it does not, through no fault of his, it appears to us that he should be allowed to seek redress. Here, the owner states that he carried the automobile back to the seller at least six times to have the necessary repairs made. The dealer attempts to refute this by saying that upon at least two occasions he did not have an appointment with the service department. We doubt seriously if the dealer required an appointment when the purchaser sought to purchase the automobile.
After a thorough study of the financial transaction involved in this business, we do not believe this opinion will in any way obstruct the free flow of commerce. We do not anticipate that we are placing an undue burden upon the automobile industry in requiring them to shoulder the responsibility of making sure their products perform as they have been represented.
In rendering judgment on the pleadings, appellant has been effectively prevented from proving his claim. We, therefore, reverse and remand for a trial by jury as requested by this appellant.
PIERCE, C.J., and WEHLE, VICTOR O. (Ret.), Associate Judge, concur.