**H. E. AUTREY et al., Plaintiffs,**

v.

**CHEMTRUST INDUSTRIES CORPORATION, a corporation of the State of Delaware, Defendant.**

**George HEANEY et al., Plaintiffs,**

v.

**CHEMTRUST INDUSTRIES CORPORATION, a Delaware corporation, Defendant.**

**LEE CHEMICALS, INC., a corporation of the State of South Carolina, Plaintiff,**

v.

**CHEMTRUST INDUSTRIES CORPORATION, a corporation of the State of Delaware, Defendant.**

**ASSOCIATED CHEMICAL DIVISION, SOUTHERN AGGREGATE PLACING & WELDING, INC., a Florida corporation, Plaintiff,**

v.

**CHEMTRUST INDUSTRIES CORPORATION, a Delaware corporation, Defendant.**

Civ. A. Nos. 3949, 3979, 3955 and 3977.

United States District Court,
D. Delaware.

Aug. 1, 1973.

Richard I. G. Jones and Robert W. Ralston, of Prickett, Ward, Burt & Sanders, Wilmington, Del. and Milam, Martin & Ade, Jacksonville, Fla., of counsel, for plaintiffs.

Frank O'Donnell and Richard Franta, of O'Donnell, Hughes & Lowicki, Wilmington, Del., and Joseph G. Manta, of

La Brum & Doak, Philadelphia, Pa., of counsel, for defendant.

## OPINION

LATCHUM, District Judge.

The matter presently before the Court is defendant's motions for summary judgment in Civil Actions 3949, 3955 and 3977, and for partial summary judgment in Civil Action 3979.

The plaintiffs, in these four diversity actions, consolidated for the purpose of the present motions, charge the defendant, Chemtrust Industries Corporation ("Chemtrust"), with breach of warranty and fraudulent misrepresentation in regard to the sales to each of the plaintiffs of a chemical product purporting to eliminate algae and scale problems in air conditioning water tanks. All plaintiffs seek compensation for out-of-pocket expenses, lost profits and impairment of good will and reputation, and in addition, seek punitive damages[1] on the ground that the misrepresentations were made in a willful, wanton or reckless manner.

Chemtrust argues in its motions for summary judgment that as a matter of law the plaintiffs are not entitled to damages for lost profits and injury to good will and reputation, and that punitive damages are not recoverable in these suits. In addition, Chemtrust claims that a lack of privity on the part of all the plaintiffs, except those in Civil Action 3979, will bar any recovery on their part from Chemtrust. The plaintiffs, of course, resist the motions, arguing that all of the damages claimed in the complaints are recoverable as a matter of law.

The background facts, which the Court assumes to be true for the purpose of these motions only, United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), are as follows: Grady P. Martin ("Martin"), an independent chemical salesman, was selling Bio-Care, a drain activator and cleaner manufactured by Madison Chemical Corporation, a predecessor to Chemtrust. (Hereinafter all references will be to Chemtrust.) By virtue of some experiments which he conducted on air conditioning installations in Houston, Texas, Martin came to the conclusion that Bio-Care could be used to remove scale and algae build-up in air conditioning systems, apparently a chronic problem in large commercial buildings cooled by air conditioning. Bio-Care appeared to work without causing any resultant damage, which would make it superior to and less expensive than other methods of removal then in practice.

Martin met with officials of Chemtrust in August of 1966. Martin told the officials he had discovered a new use for one of their products which he would reveal to them if they assured him of an exclusive distributorship. After receiving those assurances, Martin disclosed the results of his experimentation, and a formal contract was drawn up shortly thereafter providing Martin with an exclusive national distributorship as long as certain sales quotas were maintained. Before advertising the new use for the product, the executive vice-president of Chemtrust, Myron Kane, took a tour of several of the installations in Texas where Martin had used Bio-Care, but Chemtrust made no scientific testing to confirm the results claimed by Martin. In its advertising material, however, Chemtrust claimed that the products were "performance proven". Bio-Care was renamed "p-Hydronic 7" and "m-Hydronic". Chemtrust advertised that p-Hydronic 7 was to be used for initial treatment of algae and scale build-up, while m-Hydronic was to be used thereafter to prevent build-up. However, there is no chemical difference between the products. They differ only in color.

Henry E. Autrey ("Autrey"), one of the plaintiffs in Civil Action 3979, first heard about the products from Martin's

---

1. The plaintiffs in Civil Action 3979 seek other relief not involved in this summary judgment motion.

son during a business luncheon meeting in Jacksonville, Florida. Autrey, intrigued by the possibilities of such a product, traveled to Houston to discuss the product with Martin. After examining several of the installations where Martin had done his experiments, Autrey became even more interested. To confirm Martin's claims, Autrey went to Chicago to confer with officials of Chemtrust who gave him assurances that the product had been thoroughly tested and found completely satisfactory for the purposes for which it was advertised. With these assurances, Autrey returned to Florida where he convinced his friend George Whitehurst ("Whitehurst"), a co-plaintiff in Civil Action 3979, that the product was sound. Thereafter, the two formed Hydro-Chem, Inc. ("Hydro-Chem"), a Florida corporation, and signed an agreement with Chemtrust to be the distributor of p-Hydronic 7 and m-Hydronic in Florida. They entered into contracts with several dealers in Florida who were to deal directly with the public. Among these were George Heaney and Peter Reister, the plaintiffs in Civil Action 3949, who formed a corporation called Diversified Chemicals, Inc., Lee Chemicals, Inc., plaintiff in Civil Action 3955, and Associated Chemical, the plaintiff in Civil Action 3977, a division of an existent corporation, Southern Aggregate Placing & Welding, Inc., which was created to deal in the Hydronics products. Each of the dealers entered into the agreement with Hydro-Chem on the basis of Chemtrust's advertising brochures and general reputation for reliability.

In actual use the product turned out to be ineffective for controlling scale and algae. This became obvious during early 1967. However, Hydro-Chem and the dealers continued selling on assurances from Chemtrust that it was attempting to iron out all the problems. For example, Chemtrust periodically suggested to the dealers certain adjustments to be made when using the product. Apparently Autrey and Whitehurst believed the assurances given to them by

Chemtrust because when Martin's national distributorship lapsed for failure to meet its quotas, they formed a new corporation, Hydro-Science of America, Inc. ("Hydro-Science") which became the new national distributor. Despite all adjustments, however, and the development by Chemtrust scientists of a new formula with "stronger enzymes", the Hydronics products failed to perform as advertised. In the early part of 1968 all of the dealers herein involved ceased selling the Hydronics products. Hydro-Science and Hydro-Chem continued to distribute the Hydronics products to other dealers but in the fall of 1968 Chemtrust ceased making shipments of the products to them.

In 1968 the three aforementioned dealers ("dealer plaintiffs") brought an action against Chemtrust, Hydro-Chem, Autrey and Whitehurst in Florida. That action was dismissed by a Florida court on June 25, 1969 because of insufficient service of process on Chemtrust. The basis for the dismissal was that the cause of action did not arise out of the activities of any of Chemtrust's agents in Florida. The Court ruled specifically that Hydro-Chem was not an agent of Chemtrust, but an independent distributor.

Thereafter, in 1970 the three dealers as well as the distributors, filed separate actions against Chemtrust in this Court. Count 1 of each complaint charges Chemtrust with negligent misrepresentation. Count 2 charges it with breach of warranty. In both Counts 1 and 2 compensatory damages are sought, including out-of-pocket expenses, lost profits, and impairment to reputation and good will. Count 3 of each complaint charges that the misrepresentations alleged in Count 1 were made in a willful, wanton or reckless manner. Chemtrust has moved to dismiss the claims of the plaintiffs in Counts 1 and 2 of all four actions for lost profits, for damages to reputation and good will and to dismiss the claims for punitive damages in Count 3 of all four suits as a matter of law. In addition, Chemtrust has moved to dismiss

the complaints of the dealer plaintiffs in their entirety on the ground that once the claims for lost profits, damage to reputation and good will, and punitive damages are stricken from the complaints, the only remaining claims for relief are for out-of-pocket expenses which in none of the dealer cases meets the amount necessary to confer diversity jurisdiction on this Court under 28 U.S. C. § 1332(a)(1). Alternatively, Chemtrust has moved to dismiss the claims for breach of warranty asserted by the dealer plaintiffs in Count 2 of their complaints on the ground that their lack of privity with Chemtrust bars any claim for relief on that count.

■■■ Before considering the merits of the arguments raised by Chemtrust, as a preliminary matter the Court must determine the law applicable to the controversies. As a federal court sitting in Delaware, this Court is required to apply Delaware substantive rules of law, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. Klaxon Co. v. Stentor Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions, Delaware applies the law of the place of the wrong. Friday v. Smoot, 211 A.2d 594 (Del.Supr.1965). Where the tort involved is misrepresentation, the wrong is deemed to occur where the misrepresentation operated to cause the injury or loss, not where the fraudulent representations were made. Smyth Sales, Inc. v. Petroleum Heat & Power Co., Inc., 128 F.2d 697 (C.A.3, 1942) (Goodrich, J.); Pat J. Murphy, Inc. v. Drummond Dolomite, Inc., 214 F.Supp. 496 (E.D.Wis.1963) aff'd 346 F.2d 382 (C.A.7, 1965); Western Newspaper Union v. Woodward, 133 F.Supp. 17 (W.D.Mo.1955); Restatement, Conflict of Laws (1934) § 377 n. 4; 2 Beale, The Conflict of Laws (1935) § 377.2. Since the business losses suffered by all the plaintiffs substantially occurred in Florida, Florida is the place of the alleged tortious wrongs and Florida's substantive law will govern the tort

claims asserted in Counts 1 and 3 in all four actions.

■■■ In breach of warranty cases, Delaware applies the law of the place where the sale occurred. Handy v. Uniroyal, Inc., 327 F.Supp. 596 (D.Del. 1971). Under 5A Del.C. § 2–106(1), a sale consists in the passing of title from the seller to the buyer for a price. Under 5A Del.C. § 2–401(2)(a), title passes to the buyer at the time and place of shipment where the contract is a shipment contract. Since the place of shipment from Chemtrust to the distributor plaintiffs in Civil Action 3979 was Maywood, Illinois and since the chemicals were shipped "F.O.B. Maywood, Illinois", the title to the goods passed there and hence the sale occurred there. Hence, the substantive law of Illinois applies to the Count 2 breach of warranty claims of the plaintiffs in Civil Action 3979.

■■ The remaining plaintiffs are all dealers who bought the Hydronics products from Hydro-Chem in Florida. Title to the goods passed in Florida so that the sales to them occurred there and thus Florida's substantive law governs the Count 2 breach of warranty claims in Civil Actions 3949, 3955 and 3977.

The Court will now treat the issues raised by Chemtrust in its motions for summary judgment of dismissal.

The first issue raised by Chemtrust is that recovery by the dealer plaintiffs in Civil Actions 3949, 3955 and 3977 for breach of warranty is absolutely barred because under Florida law a warranty only runs from the seller to those in privity with him and the dealer plaintiffs were not in privity with Chemtrust. The plaintiffs, on the other hand, argue that Hydro-Chem served as Chemtrust's agent so that the contracts entered into with Hydro-Chem were, in effect, contracts with Chemtrust, placing the dealers in privity with Chemtrust. Alternatively, the dealer plaintiffs assert that the requirement of privity to sustain an action for breach of warranty has been abandoned in Florida.

Chemtrust argues that the finding of the Circuit Court for the Fourth Judicial District of Florida that Hydro-Chem, the party with whom the dealer plaintiffs dealt, was not an agent for Chemtrust must be given collateral estoppel effect in a consideration of the issue of privity. The dealer plaintiffs assert that since the Florida decision was a dismissal on jurisdictional grounds, it was not "on the merits" and therefore lacks collateral estoppel effect.

■ The Court agrees with Chemtrust's position. As previously stated this Court is bound to apply Delaware substantive law. Delaware Courts have held that a judgment of another state properly authenticated will be given full faith and credit in Delaware to the same extent as given in the state in which it was entered. Guayaquil & Quito Railway Co. v. Suydam Holding Corp., 11 Terry 424, 132 A.2d 60 (Del.Supr.1957); See also McElroy v. McElroy, 256 A.2d 763 (Del.Ch.1969); Epstein v. Chatham Park, Inc., 2 Storey 56, 153 A.2d 180 (Del.Super.1959). Thus, if another Florida court would give collateral estoppel effect to the agency issue decided by the Florida Circuit Court, this Court would also.

■ Under Florida law even if a judgment is not "on the merits" it is conclusive as to issues or technical points actually decided therein. Kent v. Sutker, 40 So.2d 145 (Fla.Supr.1949). Therefore, the ruling by the Florida Circuit Court that Hydro-Chem was not Chemtrust's agent would be binding on other Florida courts and hence is binding on this Court. Consequently this Court is foreclosed from any reconsideration of that factual determination and must hold as a matter of law that there was no privity of contract between Chemtrust and plaintiff dealers of Hydro-Chem.

This Court now must consider whether lack of privity is a bar to recovery by the dealer plaintiffs for a breach of warranty under Florida law. It is Chemtrust's position that under Florida law the only exception to the privity requirement is set forth in Fla.Stat. § 672.2–318, F.S.A. Florida, in enacting the uniform commercial code, eventually decided on Alternative A .to Article 2, Section 318, which reads:

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer, who is a guest in his home or who is an employee, servant or agent of his buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

Chemtrust argues that the only exceptions to the privity requirement are those specifically set forth in the above statute, namely parties in a particular relationship to the buyer who are injured in person. This Court does not agree. Nothing in the statutory language cited appears to limit recovery to only the enumerated classes. Rather it appears to be more in the nature of a legislative assurance that where personal injury arises, recovery is permitted among those classes enumerated notwithstanding a lack of privity between the injured person and the seller. Moreover, no disclaimer of warranty will be effective to bar recovery for personal injuries. The negative implication is that the developing case law will reach appropriate results in situations other than the one specifically set forth in the above statute. This view is confirmed by Official Comment 3 to the Florida Statute § 672.2–318 which states:

"This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law and whether the seller's remedies, given to this buyer who resells, extends to other persons in the distributive class."

Thus, § 318 has no effect on Florida's developing case law involving situations where a nonconsumer plaintiff is seeking to recover from a remote manufacturer for breach of warranty, and the Court must examine Florida's case law to determine whether lack of privity would be a bar in the instant situation. Florida courts recently have consistently deemphasized the importance of privity in breach of warranty actions. In Bernstein v. Lily-Tulip Cup Corp., 177 So.2d 362 (3d Dist.Fla.App. 1965), affirmed 181 So.2d 641 (Fla. Supr.1966), a Florida court held that there was no requirement of privity between a consumer and remote manufacturer where breach of warranty produced personal injury. In Power Ski of Florida, Inc. v. Allied Chemical Corp., 188 So.2d 13 (3d Dist.Fla.App.1966), a Florida court held that privity was not required between one manufacturer bringing an action against another in the distributive chain. In that instance, the only injury was economic disappointment. In Manheim v. Ford Motor Co., 201 So.2d 440 (Fla.Supr.1967), a Florida court specifically held that no privity was required between a consumer and a manufacturer for mere economic disappointment. In Rehurek v. Chrysler Credit Corp., 262 So.2d 452 (2d Dist. Fla.App.1972), cert. denied 267 So.2d 833 (Fla.Supr.1972), a Florida court reaffirmed the decision in *Manheim*. Chemtrust argues that the enactment of Fla.Stat. § 672.2–318, F.S.A. negated the erosion of the privity rule in the Florida courts exemplified by the above decisions. However, in *Rehurek* the transaction involved occurred after the enactment of § 318. The fact that the *Rehurek* Court did not even discuss the effect of § 318 on the developing case law regarding privity indicates that it was convinced that § 318 was only meant to apply to the specific situation falling within its terms. Therefore on the basis of the above decisions, the Court concludes that under present Florida law one party may sue another in the distributive chain for breach of warranty notwithstanding lack of privity, even where the injury suffered is a mere economic disappointment. As a consequence the dealer plaintiffs in the instant situation are not barred from recovery. Therefore the Court declines to dismiss Count 2 of the dealer plaintiffs' complaints in Civil Actions 3949, 3955 and 3977.

The next issue to consider is whether the plaintiffs in all four actions can recover punitive damages sought in Count 3. Chemtrust's position is that punitive damages are not recoverable as a matter of law in Florida for breach of warranty. The Court agrees that this is a correct statement of Florida law. However, the complaints allege not only breach of warranty in Count 2 but also "wanton, willful or reckless" misrepresentations in Count 3. Under Florida law punitive damages can be recovered for breach of warranty, if the breach is "attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort." Griffith v. Shamrock Village, Inc., 94 So.2d 854, 858 (Fla.Supr.1947). Accord, Associated Heavy Equipment Schools, Inc. v. Masiello, 219 So.2d 465 (3d Dist.Fla. App.1969); Holbein v. Rigot, 245 So.2d 57 (Fla.Supr.1971). Counts 1 and 3 of each complaint read together allege in conclusionary language that there was an intentional misrepresentation amounting to an independent tort. Such charges, if proved, would sustain an award of punitive damages under Florida law.

However, as a matter of pleading, the plaintiffs fail to meet the requirements of Rule 9, F.R.Civ.P. Count 3 of all four complaints in effect alleges fraud. Rule 9(b) requires that in all averments of fraud, the circumstances constituting fraud must be stated with particularity. None of the four complaints allege facts constituting fraud, but instead contain only conclusionary statements. "Circumstances" in Rule 9 refer to "the time, place, and contents of the false representations, as well as the

identity of the person making the misrepresentation and what he obtained thereby." 5 Wright and Miller, Federal Practice and Procedure § 1297 at p. 403. Because Count 3 of all four complaints fails to allege the elements of fraud with sufficient particularity, the Court will dismiss Count 3 of all four complaints but grants leave to plaintiffs to file amendments if they so desire.

■ The next issue confronting the Court is whether the dealer plaintiffs can recover lost profits for either breach of warranty or fraudulent misrepresentation. The Florida rule is that future loss of profits is not recoverable for a breach of warranty unless the plaintiff's business is established. New Amsterdam Casualty Co. v. Utility Battery Manufacturing Co., 122 Fla. 718, 166 So. 856 (1935). A business is established when " 'it has such stability and regularity as to give its past record of profits some probative value as indicating the probable subsequent profit.' " Belcher v. Import Cars, Ltd., 246 So.2d 584, 587 (3d Dist.Fla.App.1971), cert. den. 252 So.2d 801 (Fla.Supr.1971). In the instant cases, none of the businesses of the dealer plaintiffs had an established record of profits so that the general rule applies and loss of profits may not be recovered.[2]

■ The result is the same for the distributor plaintiffs in Civil Action 3979. Under Illinois law, which governs Count 2 of their complaint, loss of profits is not recoverable for breach of warranty unless the business is established. Kolberg v. Cities Service Oil Co., 343 Ill.App. 355, 99 N.E.2d 152 (1951).

Therefore, the claims for lost profits for breach of warranty asserted in Count 2 of all four complaints will be dismissed.

■ Nor are damages of future profits recoverable under Florida law for fraudulent misrepresentation. In misrepresentation actions the measure of damages is the difference between the actual value and the represented value of the products that the defrauded person was induced to purchase. Williams v. McFadden, 23 Fla. 143, 1 So. 618 (1887); Hester v. New Amsterdam Casualty Co., 412 F.2d 505, 511 (C.A.4, 1969). The Florida Supreme Court has specifically held that a victim of misrepresentation cannot recover profits from an anticipated contract with a third party but only the pecuniary losses actually sustained. Tedder v. Riggin, 65 Fla. 153, 61 So. 244, 245 (1913). Accordingly, as a matter of law, the plaintiffs cannot recover future profits for fraudulent misrepresentation so that these claims will be stricken from Count 1 of all four complaints.

Chemtrust also argues that the plaintiffs cannot recover for damages to reputation and good will for either breach of warranty or fraudulent misrepresentation. The Court agrees.

■ Treating the breach of warranty claims first, under Florida law, loss of reputation has been held to be too speculative to serve as a basis for recovery in breach of warranty actions. Allied Chemical Corp. v. Eubanks Industries, Inc., 155 So.2d 740 (Fla.App.3d Dist.1963). Thus, the claim for damages to reputation and good will in Count 2 of the complaints of the dealer plaintiffs will be dismissed.

■ Similarly, although no Illinois decision specifically considering recovery of damages to reputation and good will for breach of contract was uncovered, Illinois subscribes to the general rule that the only damages recoverable for breach of contract are those arising naturally from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both

---

2. In Civil Action 3977, the plaintiff, Southern Aggregate Placing & Welding, Inc., was an established corporation. However, a new division, Associate Chemicals was created for the purpose of selling the Hydronics products and this division, of course, did not have an established record of profits so that the claim for future loss of profits must be stricken in that action also.

parties at the time they made the contract, as the probable result of its breach. Freyn Engineering Co. v. Thomas Hoist Co., 335 Ill.App. 121, 80 N.E.2d 452 (1948). Therefore, the claim for damages to reputation and good will in Count 2 of the distributor plaintiffs' complaint in Civil Action 3979 will also be dismissed.

 Turning next to the fraudulent misrepresentation claims, this Court was unable to discover any Florida decision specifically considering whether damages for loss of reputation can be recovered for fraudulent misrepresentation. However, Florida courts have ruled that a plaintiff may not be allowed to recover where his basis is an uncertain and indefinite estimate, West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176, 179–180 (1896), and as noted previously, have disallowed claims for loss of future profits resulting from misrepresentation as too uncertain to form a basis for recovery. It would appear to this Court that a calculation of damages resulting from loss of reputation would be even less certain than a calculation of lost future profits. This Court concludes that a Florida court faced with this question would refuse to allow a recovery for a possible loss of reputation resulting from fraudulent misrepresentation. Therefore, the claims for damages to loss of reputation and good will in Count 1 will be dismissed from all four complaints.

Finally, Chemtrust has moved to dismiss the complaints of the dealer plaintiffs in their entirety on the ground that the remaining claims for damages amount to less than the minimum amount necessary to confer jurisdiction on this Court. This the Court cannot do. Dismissal for lack of jurisdictional amount is improper unless it appears to a "legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). "[T]he court must be able to conclude from the record before him that the plaintiff cannot recover a sum by way of damages above the $10,000 jurisdictional floor." Nelson v. Keefer, 451 F.2d 289, 293 (C.A.3, 1971). This Court is unable to conclude from the record that the plaintiffs cannot recover more than $10,000. In each action the out-of-pocket expenses listed by the plaintiffs in answers to interrogatories exceed gross sales receipts by more than $10,000. While at trial it may develop that some of the expenses are duplicative or excessive, the Court is unable to reach such conclusions from the record before it. For that reason the Court will refuse to dismiss the actions brought by the dealer plaintiffs for lack of jurisdictional amount.

An order will be entered in accordance with this opinion.