421 So.2d 590 (1982)
FIRST NEW ENGLAND FINANCIAL CORPORATION, f/u/b/o CITY Trust, Appellant/Cross-Appellee.
v.
Randall R. WOFFARD, Appellee/Cross-Appellant.
No. 81-423.
District Court of Appeal of Florida, Fifth District.
October 13, 1982.
Rehearing Denied November 10, 1982.
*592 David W. Boone, Fort Lauderdale, for appellant/cross-appellee.
Henry J. Martocci, Cocoa, for appellee/cross-appellant.
DAUKSCH, Judge.
This is an appeal from a judgment rendered in favor of the appellant on the main claim and in favor of the appellee on the counterclaim.
The facts are as follows: Appellee decided to purchase a 36-foot sailing yacht from a yacht brokerage company. The broker suggested that appellee talk to First New England Financial Corporation, a bank servicing firm representing out of state banks interested in making marine loans. Appellee agreed to finance his purchase with First New England which had first checked appellee's credit standing. Appellee entered into a retail installment contract with the brokerage. The contract was a pre-printed form supplied by First New England and which prominently displayed that name. The contract, by its own terms, was simultaneously assigned to First New England.
The following day, First New England assigned the contract to City Trust, a Connecticut bank and the named appellant. The only notice of this assignment given to appellee was 1) the bank's name, address and telephone number appearing under the assignee's name and address (First New England), located at the top of the front page of the contract in a section entitled "Identification of Creditors"; (2) a sentence located near the bottom of the front page stating that First New England would reassign the contract to a bank, and 3) the coupon payment book bearing the name of City Trust which was received by appellee weeks later.
Upon first possession and voyage of the yacht, appellee discovered several manufacturing defects. Within twenty-four hours of delivery of the yacht and discovery of the defects, appellee documented his complaints by telegram to the manufacturer, the brokerage, and First New England. Upon learning of the final assignation of the contract, appellee gave notice to appellant. Appellee continued his monthly payments for eight months, ceasing when it became evident the parties were unwilling to remedy the defects.[1]
Appellant through its agent, First New England, filed the complaint seeking a writ of replevin to recover the yacht purchased by appellee. The complaint alleged that appellant was the holder in due course of a retail installment contract upon which appellee had defaulted in the amount of $42,054.25. Appellee asserted three affirmative defenses in his answer: 1) failure of consideration, 2) breach of implied warranty of fitness for a particular purpose, and 3) breach of implied warranty of merchantability. Additionally, appellee counterclaimed[2] for damages, alleging that appellant, *593 as assignee, agreed to accept assignment of the contract subject to all claims and defenses existing between the original parties to the contract. Appellee sought damages suffered as a result of the breaches of implied warranty: return of his down payment ($12,349.56), return of monthly installment payments made, and costs incurred for docking, storage and maintenance of the yacht.
Following a bifurcated trial, appellee prevailed on the counterclaim. Appellant prevailed in the replevin action[3] and was awarded attorney's fees and costs. On appeal appellant claims the trial court erred in holding the assignee of an installment sales contract liable for a breach of implied warranty by the seller/assignor of the contract. On cross-appeal appellee claims error in regard to the judgment of replevin and the award of attorney's fees and costs to appellant.
The lower court denied appellant the status of a holder in due course, based on the decision of Rehurek v. Chrysler Credit Corp., 262 So.2d 452 (Fla. 2d DCA 1972).[4] We affirm the trial court's judgment for other reasons.
The Contract in the present case, entitled "Marine Security Agreement-Retail Installment Contract" contains the provision set forth in 16 CFR § 433.2:
NOTICE
Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.
This provision allows a consumer to set up, against one who finances a purchase, those claims and defenses which could be asserted against the seller of goods. Immediately following that provision is:
NOTICE ABOVE DOES NOT APPLY IF:
a) the amount financed ... exceeds $25,000.00. In such case, holder, nevertheless, shall be subject to all defenses which Buyer may have against Seller under this contract pursuant to the applicable State law since the Notice above is a Federal rule rather than a State rule and does not eliminate defenses under State law.
or
b) This Consumer Contract form is used for a boat purchased primarily for commercial *594 or business use. In such case, Buyer agrees not to assert any claim or defense arising out of this sale against Seller as a defense, counterclaim or setoff to any action by any assignee for the unpaid balance of the total of payments or for possession of the boat.
As the amount financed in this consumer transaction[5] exceeds $25,000.00, we look to applicable state law to determine whether appellant is subject to appellee's claims/defenses. Under section 679.206(1), Florida Statutes (1981)[6], an agreement by a buyer waiving any claims/defenses against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of any claim/defense. Such an agreement waiving claims/defenses often appears in the form of a waiver of defenses clause[7] in a contract. There is no such clause in this contract. Section 679.206(1) also provides that a buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement waiving claims/defenses. The contract does not meet the requisites of negotiability and does not appear to be a negotiable instrument as defined in Chapter 673, Florida Statutes (1981). Thus, section 679.206(1) is inapplicable.
The contract created a purchase money security interest to be retained by the seller or seller's assignee. Section 679.206(2) provides that "when a seller retains a purchase money security interest in goods, the chapter on sales (Chapter 672) governs the sale and any disclaimer, limitation or modification of the seller's warranties." Before reaching the merits of appellee's counterclaim for breach of warranty, governed by Chapter 672, we must first see if any other state law prevents appellee's assertion of the claim against the assignee.
Section 679.318, Florida Statutes (1981) provides in part:
1) Unless an account debtor[8] has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 679.206, the rights of an assignee are subject to:
a) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
b) Any other defense or claim of the account debtor against the assignor *595 which accrues before the account debtor receives notification of the assignment.
An assignee has traditionally been subject to defenses or set-offs existing before an account debtor is notified of the assignment. When the account debtor's defenses on an assigned claim arise from the contract between him and the assignor, it makes no difference whether the breach giving rise to the defense occurs before or after the account debtor is notified of the assignment. The account debtor may also have claims against the assignor which arise independently of that contract: an assignee is subject to all such claims which accrue before, and free of all those which accrue after, the account debtor is notified.[9] The account debtor may waive his right to assert claims or defenses against the assignee to the extent provided in section 679.206, Florida Statutes. Uniform Commercial Code, § 9-318, Official Comment, 1972. This is in accord with the general rule in sales transactions that the assignee takes his assignment subject to the purchaser's defenses, set-offs and counterclaims against the seller. 39 FLR 3d 518. Restatement Contracts 2d, § 336 provides:
* * * * * *
2) The right of an assignee is subject to any defense or claim of the obligor which accrues before the obligor receives notification of the assignment, but not to defenses or claims which accrue thereafter except as stated in this section or as provided by statute.
* * * * * *
4) An assignee's right against the obligor is subject to any defense or claim arising from his conduct or to which he was subject as a party or a prior assignee because he had notice.
Just as an assignee is subject to defenses and claims accruing before the obligor receives notification, so a sub-assignee is subject to defenses and claims accruing between the assignee and obligor before the obligor receives notice of the sub-assignment. Defenses and claims arising from the terms of the contract creating the right are available to the obligor regardless of when they accrue.
Section 671.201(26), Florida Statutes, defines the giving and receipt of notice:
A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when:
a) It comes to his attention; or
b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.
Appellee's claim of breach of warranty arose out of the terms of the contract and also accrued before receipt of notification of assignment. Testimony during trial proved that appellee told the seller that he *596 specifically wanted to buy a sailing yacht that he could live aboard full time and also use for pleasure sailing. Appellee told the seller the yacht must be suitable for "blue water" sailing, i.e., ocean sailing. Thus, if there was a breach of warranty, it arose out of the terms of the contract (as incorporating the sales agreement) and accrued before appellee received notification of assignment, in this case by receipt of the coupon payment books.
The contract contains the following provision, set in different type and in a conspicuous position:
WARRANTY DISCLAIMERS
IF THE BOAT IS A NEW BOAT, THERE ARE NO WARRANTIES OF SEAWORTHINESS, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, UNLESS SELLER GIVES BUYER A WRITTEN WARRANTY, IN WHICH EVENT, THE FOREGOING WARRANTY DISCLAIMER IS INOPERATIVE. IF THE BOAT IS A USED BOAT, BUYER ACKNOWLEDGES THAT HE HAS EITHER CAUSED A SURVEY OF THE CONDITION OF THE BOAT TO BE MADE OR HAS BEEN GRANTED SUFFICIENT TIME TO HAVE SUCH A SURVEY MADE AND HAS WAIVED SUCH SURVEY AND, THEREFORE, RELIES ENTIRELY ON SUCH SURVEY OR UPON HIS OWN INSPECTION OF BOAT AND PURCHASES THE BOAT "AS-IS".
Relevant portions of section 672.316, Florida Statutes (1981), provide:
1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate a limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (§ 672.202) negation or limitation is inoperative to the extent that such construction is unreasonable.
2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "there are not warranties which extend beyond the description on the fact hereof."
3) Notwithstanding subsection (2):
a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty;
* * * * * *
Unless excluded or modified, a warranty of merchantability is implied in a contract for sale of goods if the seller is a merchant with respect to goods of that kind. Sec. 672.314, Fla. Stat. The warranty disclaimer as to a new boat effectively excludes the implied warranty of merchantability, as it contains the word "merchantability" and is set forth conspicuously. Sec. 672.316, Fla. Stat. A warranty of fitness for a particular purpose arises when the buyer relies on the seller's skill or judgment to select the goods and the seller at the time of contracting has reason to know the buyer's purpose and that the buyer is relying on the seller's skill and judgment. Sec. 672.315, Fla. Stat. Appellee has shown that the seller knew of appellee's particular purpose and that appellee was relying on the seller's judgment in choosing the best yacht for that purpose, i.e., crossing oceans as opposed to weekend lake sailing.[10] Thus, *597 the only issue left is whether the disclaimer effectively excluded any implied warranty of fitness for particular purpose.
The disclaimer states there are no warranties as to seaworthiness, merchantability or fitness for a particular purpose. Under Florida and Code law, all implied warranties, whether of merchantability or fitness for a purpose, are excluded, unless the circumstances indicate otherwise, by any language making it plain that there is no implied warranty. Sec. 672.316(3)(a), Fla. Stat.
To be effective, a seller's disclaimer of warranties in the sale of consumer goods must be part of the basis of the bargain between the parties. Knipp v. Weinbaum, 351 So.2d 1081 (Fla. 3d DCA 1977). The evidence indicates that appellee and seller entered into the sales agreement on the premise that the yacht was suitable for appellee's purposes. Circumstances indicate that seller's disclaimer of warranty of fitness for a particular purpose was not made a part of the bargain; to the contrary, seller's warranty of fitness for the particular purpose was an essential factor in the initial agreement between the parties.
Appellant has not convinced this court that the lower court erred in ruling in appellee's favor on the damages claim. The contract provides for payment by the installment buyer of court costs plus attorney's fees upon default. The lower court correctly awarded costs and attorney's fees to appellant in the replevin action. As appellee has not presented any contractual or statutory authority supporting an award of attorney's fees on the counterclaim, such request is denied.
AFFIRMED.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] The defects included a defective keel causing misalignment in excess of two inches, engine malfunctions and unpainted bottom areas.
[2] While apparently there is no statutory authority providing for pleas of counterclaim in replevin actions in the ordinary sense in which they are allowable in other forms of action, courts have allowed a defendant to plead and prove a claim for damages against the plaintiff arising out of the same transaction. Jacksonville Paper Co. v. Smith & Winchester Manufacturing Co., 147 Fla. 311, 2 So.2d 890 (Fla. 1941); Delco Light Co. v. John LeRoy Hutchinson Properties, 99 Fla. 410, 128 So. 831 (Fla. 1930). The court in the latter case, Id. at 836, cites to Cobbey on Replevin, 2d Edition, § 795 to state:

A defendant in a replevin suit may plead a counterclaim as a defense and as an offset to the damages. Where plaintiff claims damages for detention, defendant may plead and prove a counterclaim arising out of the same transaction against such claim for damages. The subject matter of litigation in replevin is the property mentioned in the complaint, and the defendant cannot claim the release and return of other and distinct personal property, even though he present such a case as would have enabled him to recover in an independent action. In replevin by the seller of goods, after notes given in payment therefor and secured by mortgage thereon have become overdue, defendant may show payment in part and damages from breach of warranty. A breach of warranty may be used as a cause for an original action, a counterclaim, or as a matter of defense, at the option of the warrantee. (Emphasis supplied).
[3] Appellant authorized First New England to effect repossession of the yacht, which was returned to the brokerage and sold in its defective condition at a profit.
[4] The trial court relied upon Rehurek v. Chrysler Credit Corporation, 262 So.2d 452 (Fla. 2d DCA 1972). Rehurek held that a financer to which an automobile dealer had assigned a retail installment contract and which was formed exclusively for the purpose of financing the sale of the auto manufacturer's products and which furnished the forms of the sales contract and investigated the credit rating of the purchaser did not take the assignment in good faith and thus the purchaser was not precluded from raising certain defenses under the contract which provided for waiver of defenses against the assignee. The Rehurek court applied one of the three rationales courts sympathetic to consumer needs have employed in order to circumvent the statutory test of actual knowledge on the part of the consumer note holder (holder in due course). The rationales often used are (1) principal-agency relationship between financial institution and seller, (2) financial institution as original party to transaction, and (3) close connection between seller and financial institution (as in Rehurek). The close connection theory supplies an exception to the holder in due course doctrine where the financial institution has a close working relationship with the seller in a consumer credit transaction. See Mutual Finance Company v. Martin, 63 So.2d 649 (Fla. 1953).
[5] It is not disputed that appellee purchased the yacht for his own personal use. Thus, the contract was for the purchase of "consumer goods", defined in section 679.109(1) as "goods ... used or bought primarily for personal, family or household purposes."
[6] Section 679.206, Florida Statutes (1981):

1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the chapter on commercial paper (Chapter 673). A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement.
2) When a seller retains a purchase money security interest in goods the Chapter on sales (Chapter 672) governs the sale and any disclaimer, limitation or modification of the seller's warranties.
[7] The waiver is valid except if the claim/defense is one which could be asserted against a holder in due course of a negotiable instrument. The purpose of a waiver of defenses clause is to give the assignee the status of a holder in due course of a negotiable instrument. ANDERSON on the Uniform Commercial Code, Vol. 4, § 9-206:11.
[8] "Account debtor" is defined as a "person who is obligated on an account, chattel paper, or general intangible." Sec. 679.105, Fla. Stat. (1981). "Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper whether or not it has been earned by performance. Sec. 679.106, Fla. Stat. (1981). "Chattel paper" means a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods. Sec. 679.105, Fla. Stat. (1981). "General intangibles" means any personal property other than goods, accounts, chattel paper, documents, instruments and money. Sec. 679.106, Fla. Stat. (1981).
[9] On the question of whether a debtor can assert against the assignee a counterclaim based on the obligation of an assignor maturing subsequent to the assignment but before notice thereof:

The clear historical ground for supporting the general rule is that the legal right to the assigned claim still is in the assignor, and that therefore in an action on the claim there may be set off a claim against him unless it is inequitable for the defendant to assert the right. It is inequitable if the set-off was acquired after notice of the assignment. The reason for maintaining the old rule, in spite of changed procedure, allowing the assignor to sue in his own name, is because the rule is just. Until notice of the assignment, the debtor should be allowed to assume that he is under contract with the assignor whether the assignor's claim or his own is matured or not. It may be urged that it is inequitable in any case for the defendant to assert his set-off when the real plaintiff in interest, whether nominally plaintiff or not, is an assignee, unless the assignor is insolvent, since otherwise the defendant might collect his claim from the assignor who really ought to pay it. This limitation, however, of the debtor's right to set-off does not seem to have prevailed. It seems rather to have been thought equitable for the debtor to be allowed to assert the right and to compel the assignee then to sue the assignor.
Williston Contracts, Third Edition, § 432.
[10] The code distinguishes between "particular purpose" (use to which the goods are not ordinarily put) and "ordinary purpose" (use for which the goods are ordinarily used). Sec. 672.315. Living aboard a sailboat and "blue water" sailing constitutes a "particular purpose," considering the small size of the yacht.