493 So.2d 516 (1986)
EQUICO LESSORS, INC., Etc., Appellant,
v.
A. Moneim RAMADAN, M.D., Etc., Appellee.
No. BH-265.
District Court of Appeal of Florida, First District.
August 27, 1986.
*517 John D. Boykin of Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, for appellant.
William B. Watson, III and S. Scott Walker of Watson, Folds, Steadham, Christmann & Brashear, Gainesville, for appellee.
BARFIELD, Judge.
Equico Lessors appeals a final judgment rendered for Ramadan in Equico's action to enforce an equipment lease assigned to Equico by the original lessor. The trial court determined that there was a sufficiently close connection between Equico, as assignee, and the assignor of the lease so as to set aside the lease's waiver of defenses clause, allowing Ramadan, the lessee, to assert breach of warranty claims against Equico. We disagree and reverse.
On November 14, 1980, Ramadan signed a lease with Hastings Capital Corporation for a computerized energy management system for his Gainesville office building. The unit was manufactured by a subsidiary of Hastings and was installed by a Gainesville heating and cooling company. Hastings claimed the system would reduce the building's electricity consumption.
Prior to execution of the lease, Equico conducted a credit check on Ramadan after Hastings approached Equico about a future assignment of the yet-to-be executed lease. Equico also set the financial terms of the lease. Ten days after Ramadan signed the lease, Hastings Capital assigned the lease to Equico. This was effected by completion of a pre-printed assignment clause that named Equico as the assignee. Ramadan's personal guaranty of the lease was also assigned to Equico by execution of a pre-printed assignment clause, which again named Equico as assignee.
The lease contained a waiver of defenses clause as to any assignee of the lease.[1] The clause provided that an assignee would be free of all defenses or claims Ramadan, as lessee, may have against Hastings Capital, as lessor.
The expected series of horribles followed. The leased equipment failed to perform and repeated attempts to repair it were unsuccessful. According to Ramadan, the system not only failed to save any energy, it resulted in greater energy use. One year after signing the lease, Ramadan had the equipment removed by the installer and stopped making lease payments. Hastings Capital and its subsidiary went out of business. Equico then brought this suit against Ramadan for the balance of the payments due on the lease. Ramadan raised the defenses of misrepresentation and of failure of consideration and counterclaimed on a breach of warranty.
Equico initially obtained summary judgment, claiming the waiver of defenses clause precluded Ramadan's defenses. On appeal, this court reversed the summary judgment, finding that there was a question of fact as to whether Equico was so closely connected to Hastings Capital, the original lessor, or to the transaction as to *518 deny Equico the benefits of the waiver of defenses clause. Ramadan v. Equico Lessors, Inc., 448 So.2d 60 (Fla. 1st DCA 1984).
The case proceeded to trial. Equico's assistant vice president testified while it supplied the printed forms used to execute the lease, there was no prior agreement that the lease would indeed be assigned to Equico. Equico assumed the lease would be assigned and prepared the lease and related documents on that assumption. Ramadan testified he did not know Equico was a potential party to the lease until he signed the lease. However, he had been contacted by Equico during the credit check.
The trial court rendered judgment for Ramadan. It found that there was a sufficiently close connection between Equico and Hastings Capital to preclude Equico from taking the lease as a holder in due course and asserting the waiver of defenses clause against Ramadan. The court found the consideration of the lease failed and Equico could not recover the balance of the lease payments. Ramadan was allowed to recover on his counterclaim in the amount of the lease payments he had made.
Florida's Uniform Commercial Code contains a provision that validates waiver of defenses clauses in contracts or leases.[2] The purpose of this statutory provision is to treat the assignee like a holder in due course of a negotiable instrument. See 19C Fla. Stat. Ann. 240, (1966), Uniform Commercial Code Comment. Such clauses are designed to facilitate financing of transactions by insulating an innocent or unknowing purchaser of the contract, lease or financing note from disputes over the underlying transaction. Such clauses reduce the risk to assignees in taking such assignments and thereby encourage the financing of transactions by assuring a market for those wishing to assign contracts and leases.
However, because of the great protection such a clause gives an assignee, such as Equico, it is only valid when the assignment is taken for value, in good faith and without knowledge of a defense or claim. Leasing Service Corp. v. River City Construction, Inc., 743 F.2d 871 (11th Cir.1984). The close connection doctrine acts as an evidentiary rule by which the good faith of an assignee is tested. Are v. Barnett Bank of Miami Beach, NA, 330 So.2d 250 (Fla. 3rd DCA 1976). It is not a rule of law that says if a close connection appears, then the assignee will be denied the benefit of a waiver of defenses clause. In a commercial setting, more than just a close connection must be shown before an assignee will be denied the status of a holder in due course under § 679.206(1), Florida Statutes.
Courts have applied this test in cases involving both consumer and commercial transactions. See, Are v. Barnett Bank of Miami Beach, N.A., 330 So.2d 250 (Fla. 3rd DCA 1976) (close connection not found in assignment of installment sale contract on motor home used in business.); Rehurek v. Chrysler Credit Corp., 262 So.2d 452 (Fla. 2d DCA 1972) (close connection found between assignee and assignor in assignment of installment sales contract for consumer purchase of automobile); First New England Financial Corp. v. Woffard, 421 So.2d 590 (Fla. 5th DCA 1982) (close connection found in consumer purchase of yacht). However, the courts have been more protective of consumers when enforcing such clauses than of business parties.
In Are v. Barnett Bank, 330 So.2d at 250, the court refused to find the assignee *519 bank had not taken the assignment in good faith. There the buyer had purchased on an installment sales contract a motor home for use in his business. The contract was assigned to the bank. The buyer refused to continue payments after one year. The court held the facts showed that the bank as financier was not closely connected to the seller when the contract was assigned. Further, the bank was not an integral part of the selling dealer's business operations. Thus there was no question of fact that the bank did not purchase the contract in good faith nor with notice of the purchaser's claims of defects.
Courts in other jurisdictions also require a greater showing of close connection between the assignee and the assignor and the underlying commercial transaction before invalidating a particular waiver of defenses clause. In Leasing Service Corp. v. River City Construction Inc., 743 F.2d at 871, the 11th Circuit said the defendant needed to show the assignee's knowledge of the seller's fraudulent acts or its significant participation in the original transaction. The assignee's supplying the forms for the underlying lease was not sufficient as such a practice was common in commercial transactions.[3]
In Equico Lessors, Inc. v. Rockville Reminder, Inc., 4 Conn. App. 102, 492 A.2d 528 (1985), Equico Lessors (the appellant in the instant case) was denied the protection of a waiver of defenses clause upon a showing that Equico had knowledge of the guarantee which the commercial lessee alleged was breached. The facts of that case are strikingly similar to the instant case. The transaction involved the lease of energy saving equipment with a guarantee of minimum savings in electric bills. Equico supplied pre-printed forms for the transaction with assignment clauses showing Equico as assignee. Equico's employees explained how the forms were to be completed and were present when the guarantee of energy savings was discussed with the lessor's salesmen. The lease in question was assigned to Equico at about the same time it was executed. On these facts, given Equico's prior knowledge of the seller's guarantee, and therefore of potential claims that might arise, Equico was found to be closely tied to the transaction and denied judgment.
Here, the evidence of a close connection consisted of Equico's supplying pre-printed forms for the lease between Hastings Capital and Ramadan; the lease and personal guaranty contained pre-printed assignment clauses naming Equico as assignee; and Equico conducted a credit check on Ramadan before the lease was executed. Equico had taken assignments of approximately 30 leases from Hastings in the past with a total value of $250,000. However, there was no evidence of a standing agreement that Hastings Capital would assign to Equico all the leases it executed or that Equico agreed to take all assignments from Hastings Capital.
There was no showing in this transaction that Equico had knowledge of the performance guarantee made by Hastings. Equico had no knowledge of the equipment's failure before the assignment or of Ramadan's potential claims. Further, Equico did not solicit Ramadan but only agreed to finance the arrangement after Hastings Capital representatives had arranged the transaction.
The evidence offered by Ramadan was insufficient to justify setting aside the waiver of defenses clause. The trial court therefore erred in entering judgment for Ramadan. The final judgment is REVERSED and the case is REMANDED to the trial court to enter judgment for appellant.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] Paragraph 17 of the lease stated:

It is understood that Lessor contemplates assigning this Agreement, and that said assignee may assign the same. All rights of Lessor in the equipment and hereunder may be assigned, pledged, mortgaged, transferred, or otherwise disposed of, either in whole or in part, without notice to Lessee. The assignee's rights shall be free from all defenses, set-offs or counterclaims which Lessee may be entitled to assert against Lessor. No such assignee shall be obligated to perform any duty, covenant or condition required to be performed by Lessor under the terms of this Agreement.
[2] Section 679.206, Florida Statutes, provides that:

(1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to the defense of a type which may be asserted against a holder in due course of a negotiable instrument under the chapter on commercial paper.
[3] Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance, 49 Ill. App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285 (1977); ITT Industrial Credit Co. v. Milo Concrete Co., 31 N.C. App. 450, 229 S.E.2d 814 (1976) and Valmont Credit Corp. v. Mc Ilrany, 344 N.W.2d 691 (S.D. 1984).